ELEVENTH CIRCUIT NO. 19-11930

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

OUTOKUMPU STAINLESS USA, LLC, *et al.*,

Plaintiffs – Appellees,

v.

CONVERTEAM SAS, a foreign corporation now known as GE ENERGY
POWER CONVERSION FRANCE SAS, CORP.,

Defendant – Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
CASE NO. 1:16-CV-00378-KD-C

BRIEF OF APPELLANT
GE ENERGY POWER CONVERSION FRANCE SAS, CORP.

Sara Anne Ford
Wesley B. Gilchrist
Amie A. Vague
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL  35203-3200
(205) 581-0700

## CERTIFICATE OF INTERESTED PARTIES AND
## CORPORATE DISCLOSURE

Pursuant to Eleventh Circuit Rule 26.1-1(a), Appellant GE Energy Power Conversion France SAS, Corp. ("GE Energy") certifies that the following persons have an interest in the outcome of this appeal:

AIG Europe Holdings Limited

AIG Europe Limited

AIG Property Casualty, Inc.

AIG Property Casualty International, LLC

AIUH, LLC

American International Group, Inc. (AIG: NYSE)

AXA Corporate Solutions Assurance SA UK Branch

AXA France Assurance SAS

AXA SA (CS: EN)

Burr & Forman, LLP

Cassady, The Honorable William E.

Clausen Miller, P.C.

Converteam SAS

Dolive, Devin C., Esq.

DuBose, The Honorable Kristi K.

Dvoretzky, Shay, Esq.

Ferrini, Joseph, Esq.

Ford, Sara Anne, Esq.

GE Energy Power Conversion France SAS, Corp.

GE Power Conversion Group SAS

General Electric Company (GE:NYSE)

Gilchrist, Wesley B., Esq.

HDI Gerling UK Branch

HDI Global SE

HDI Haftpflichtverband der Deutschen Industrie VVaG

Jones Day

Johnson, Taylor Barr, Esq.

King, M. Christian, Esq.

Lightfoot, Franklin, & White, L.L.C.

LocalTapiola Group

Mitsui Sumitomo Insurance Co., Ltd.

MS&AD Insurance Group Holdings, Inc. (8725:TYO)

MSI Corporate Capital Ltd.

MSIG Holdings (Europe) Limited

OP Cooperative

OP Corporate Bank PLC

OP Insurance Ltd.

Outokumpu Americas, Inc.

Outokumpu Holding Nederland BV

Outokumpu Oyj (OUT1V:HEL)

Outokumpu Stainless Bar, LLC

Outokumpu Stainless Coil, Inc.

Outokumpu Stainless USA, LLC

Pohjola Insurance Limited

Ramey, E. Travis, Esq.

Rice, Amanda, Esq.

Royal and Sun Alliance Insurance Group, PLC (RSA:LON)

Royal & Sun Alliance, PLC

Royal Insurance Holdings PLC

Sompo Americas Holdings, Inc.

Sompo Holdings, Inc. (8630:TYO)

Sompo Japan Insurance Company of America

Spear, G. Randall, Esq.

Spear, Mark E., Esq.

Spear, Spear & Hamby, P.C.

Swinehart, James R., Esq.

Syndicate 3210

Talanx AG (TLX:ETR)

Tapiola General Mutual Insurance Company

Vague, Amie Adelia, Esq.

Wanhatalo, David G., Esq.

Woods, Ricardo A., Esq.

Wysocki, Kenneth, Esq.

**STATEMENT REGARDING ORAL ARGUMENT**

In the prior appeal in this case, this Court held that the district court had properly exercised jurisdiction pursuant to 9 U.S.C. § 205, which authorizes removal "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention" on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *implemented by* 9 U.S.C. §§ 201 *et seq. Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1325 (11th Cir. 2018). Despite this Court's holding, the district court concluded that it had "inherent authority to remand" and granted Plaintiffs' motion to remand this action to state court. (Doc. 110, adopting Doc. 107; Doc. 107 at 6.) Because this appeal involves the interpretation of this Court's prior decision and raises the issue of whether a district court has inherent authority to remand an action, especially after this Court has held that federal jurisdiction exists, Defendant GE Energy Conversion France SAS ("GE Energy"), formerly known as Converteam SAS ("Converteam"), requests oral argument because it believes oral argument would materially aid the Court in its resolution of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE ...................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF SUBJECT MATTER and APPELLATE JURISDICTION........1

STATEMENT OF THE ISSUES...................................................................4

STATEMENT OF THE CASE...................................................................5

    I.    STATEMENT OF THE FACTS ...................................................................5

        A.    The Alabama Steel Plant and the CRMs ...................................5

        B.    The CRM Contracts ...................................................................5

        C.    The Consortial Agreement ...................................................................7

        D.    Failure of the CRM Motors and OTK's Claims ........................8

    II..    COURSE OF PROCEEDINGS ...................................................................10

    III.    GE ENERGY'S PETITION FOR A WRIT OF CERTIORARI ..........................13

SUMMARY OF THE ARGUMENT ...................................................................14

ARGUMENT ...................................................................17

    I.    *OUTOKUMPU I* CONTROLS ...................................................................17

    II.    THE DISTRICT COURT MISAPPLIED *OUTOKUMPU I* .............................21

        A.    The District Court Overlooked this Court's Holding that the First *Bautista* Factor Was Satisfied For Jurisidiction Purposes..............................................................23

B.     This Court's Finding That the Arbitration Agreements in the Contracts Could Conceivably Affect the Outcome of this Case is Still True............................................. 24

C.     The Circumstances Have Not Changed .................................. 26

III.    THE LAW-OF-THE-CASE DOCTRINE CONTROLS THE OUTCOME OF THIS APPEAL AND REQUIRES REVERSAL OF THE DISTRICT COURT'S REMAND ORDER .................................... 30

IV.    § 205 GOVERNS, NOT § 1367 ........................................... 31

A.     District Courts Must Exercise the Jurisdiction Given to Them ........................................................ 31

B.     Remand is Governed by § 205 ................................ 33

C.     § 205 Provides No Basis for Remand ..................................... 36

D.     § 1367(c) Does Not Apply ...................................... 37

E.     Even if the District Court Had the Inherent Authority to Remand, the District Court Abused its Discretion by Applying it in This Case ....................................... 38

CONCLUSION .......................................................................39

CERTIFICATE OF COMPLIANCE .......................................41

CERTIFICATE OF SERVICE ...............................................42

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Ambrosia Coal & Const. Co. v. Pagés Morales*,
  368 F.3d 1320 (11th Cir. 2004) .......................................................................... 32

*Bautista v. Star Cruises*,
  396 F.3d 1289 (11th Cir. 2005) ................................................................. Passim

*Beiser v. Weyler*,
  284 F.3d 665 (5th Cir. 2002) .................................................................... 27, 28

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943) ............................................................................................. 32

*Burr v. Phillip Morris USA Inc.*,
  559 Fed. Appx. 961 (11th Cir. 2014) .................................................... 32

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ............................................................................................ 34

*Cohens v. Virginia*,
  19 U.S. 264 (1821) ........................................................................................ 32, 33

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ........................................................................................... 32

*ESAB Group, Inc. v. Zurich Insurance PLC*,
  685 F.3d 376 (4th Cir. 2012) ...................................................................... 36, 37

*In re City of Mobile*,
  75 F.3d 605 (11th Cir. 1996) ................................................................. 34, 35, 36

*In re: Bethesda Memorial Hospital, Inc.*,
  123 F.3d 1407 (11th Cir 1997) ............................................................................ 3

*Lloyd v. Benton*,
  686 F.3d 1225 (11th Cir. 2012) .............................................................. 3, 35, 36

iv

*Outokumpu Stainless USA, LLC v. Converteam SAS*,
  902 F.3d 1316 (11th Cir. 2018) ..............................................................Passim

*Outokumpu Stainless USA, LLC v. Fives ST Corp.*,
  233 So. 3d 921 (Ala. 2016) .................................................................. 9

*Parker v. Scrap Metal Processors, Inc.*,
  468 F.3d 733 (11th Cir. 2006) .............................................................. 38

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) .................................................... 2, 3, 31, 32, 33

*Reid v. Doe Run Resources*,
  701 F.3d 840 (8th Cir. 2012) .......................................................... 28, 29

*Schiavo ex rel. Schindler v. Schiavo*,
  403 F. 3d 1289 (11th Cir. 2005) .................................................... 15, 30, 31

*Thermtron Products v. Hermansdorfer*,
  423 U.S. 336 (1976) .......................................................... 33, 34, 35, 36

*Toole v. Baxter Healthcare Corp.*,
  235 F.3d 1307 (11th Cir. 2000) ..................................................... 30, 31

STATUTES

9 U.S.C. § 201 ............................................................................. 1, 37

9 U.S.C. § 205 ...........................................................................Passim

28 U.S.C. § 1291 ......................................................................... 2

28 U.S.C. § 1367(c) ....................................................... 2, 16, 30, 37

28 U.S.C. § 1447(c) ..................................................................... 2, 3

28 U.S.C. § 1447(d) ..................................................................... 3

28 U.S.C. § 1915(g) ................................................................ 34

28 U.S.C. § 1983 ................................................................... 33

28 U.S.C. § 1331 .............................................................. 35, 37

28 U.S.C. § 1332 ................................................................... 37

28 U.S.C. § 1441 .............................................................. 35, 37

Ala. Code § 7-2-314 ............................................................... 9

**STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION**

In July 2016, GE Energy removed this action to the United States District Court for the Southern District of Alabama from the Circuit Court of Mobile County, Alabama.  The basis for jurisdiction was 9 U.S.C. § 205, which provides: "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."

Shortly after removal, Plaintiffs moved to remand, Docs. 34 & 35, and GE Energy moved to compel arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *implemented by* 9 U.S.C. §§ 201 *et seq.* (the "Convention"), Docs. 6 & 62.  The district court denied Plaintiffs' motions to remand, granted GE Energy's motions to compel arbitration, and dismissed the action.  Docs. 50, 57, 68 & 69.  Plaintiffs appealed.

On August 30, 2018, this Court issued its decision in *Outokumpu Stainless USA, LLC v. Converteam*, 902 F.3d 1316 (11th Cir. 2018) (hereinafter, "*Outokumpu I*"), in which it affirmed the denial of Plaintiffs' motions to remand but reversed the district court's orders compelling arbitration.  GE Energy filed a petition for

certiorari in the United States Supreme Court challenging this Court's ruling on its motions to compel arbitration. The Supreme Court will hear argument on that question during the October 2019 term.

In the meantime, the case was remanded to the district court, where Plaintiffs again moved to remand to state court. Doc. 87. On April 18, 2019, the district court granted Plaintiffs' motion. Doc. 110 (adopting Report & Recommendation, Doc. 107).

The district court analyzed Plaintiffs' motion to remand under 28 U.S.C. § 1367(c), which authorizes a district court to decline to exercise supplemental jurisdiction in certain specific circumstances. The district court concluded that because this Court had determined that GE Energy could not compel arbitration under the Convention, "[t]he remaining state-law claims are supplemental in nature, and the Court has inherent authority to remand them to state court." Doc. 107 at 6.[1] Thus, in granting Plaintiffs' motion to remand, the district court purported to exercise discretion pursuant to § 1367(c), *see id.* at 6, and did not remand for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c), *see id.* at 6, n.2.

Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711-15 (1996)

---

[1] From the outset of this action, all of Plaintiffs' claims have been state law claims. *See* Doc. 1-2, Compl. Plaintiffs have never asserted any claim under federal law.

(explaining that 28 U.S.C. § 1447(d) does not bar review of remands that are "not based on lack of subject matter jurisdiction or defects in removal procedure" and that other remand orders are subject to appellate review); *Lloyd v. Benton*, 686 F.3d 1225, 1227 (11th Cir. 2012) (citing *Quackenbush*, *supra*) ("where a remand order is not based on a procedural defect or lack of subject matter jurisdiction, a party may appeal it"); *In re: Bethesda Memorial Hospital, Inc.*, 123 F.3d 1407, 1409 (11th Cir. 1997) ("a remand order is reviewable if and only if it is openly based on grounds other than (1) lack of district court subject matter jurisdiction; or (2) a motion to remand the case filed within 30 days of the notice of removal which is based upon a defect in the removal procedure"); *see also* 14C Fed. Prac. & Proc. Juris. § 3740 (Rev. 4th ed.) ("[A]ppellate review and the use of mandamus were authorized when the district court's remand to state court was based on purely administrative concerns beyond the purview of Section 1447(c).").

## STATEMENT OF THE ISSUES

In the prior appeal, this Court adopted "a bifurcated analysis" to answer the "seemingly interrelated—but actually quite separate—questions" of federal jurisdiction and arbitration under the Convention. *Outokumpu I*, 902 F.3d at 1320. This Court's answers to those "quite separate" questions in this very case were that (1) "the district court properly exercised jurisdiction" pursuant to 9 U.S.C. § 205 but (2) under the Convention, GE Energy could not compel arbitration because it had not signed the contracts with the arbitration provisions. *Id. at* 1324-25 & 1326-27. On remand, however, the district court held that because this Court ruled that GE Energy could not compel arbitration, the district court had "inherent authority" not to exercise its jurisdiction and to remand to state court. (Doc. 107 at 5; Doc. 110 at 3.) In the face of this Court's ruling that GE Energy had properly removed this case pursuant to 9 U.S.C. § 205 and thereby vested the district court with jurisdiction, was the district court correct in remanding this action to state court?

## STATEMENT OF THE CASE

This is an international commercial dispute in which this Court held that jurisdiction exists pursuant to 9 U.S.C. § 205 because the arbitration agreement in the contracts at issue "is sufficiently related to the instant dispute such that it could conceivably affect the outcome of this case." *Outokumpu I*, 902 F.3d at 1325. That was true when GE Energy removed this case in July 2016 and when this Court issued its decision in August 2018, and it remains true today.

## I. STATEMENT OF FACTS

### A. The Alabama Steel Plant and the CRMs

Plaintiff Outokumpu Stainless USA, LLC ("Outokumpu")[2] owns and operates a stainless steel plant in Calvert, Alabama. Doc. 1-2, Compl., ¶ 1. The plant has three "cold rolling mills," or CRMs, for cold rolling "flat finished products of stainless steel." *Id.*, ¶ 12-14. Each CRM has three motors. Compl., ¶ 13. GE Energy, then known as Converteam SAS ("Converteam"), designed and manufactured a total of nine motors for the three CRMs. *Id.*, ¶ 14.

### B. The CRM Contracts

In November 2007, Outokumpu and Fives ST Corp., then known as F.L. Industries, Inc., ("Fives"), executed three contracts (the "Contracts") for the purchase and sale of the CRMs and their component parts. *See* Doc. 1-1, Exs. A, B,

---

[2] Also referred to as "OTK" in some pleadings and filings.

and C (filed under seal). Outokumpu anticipated that Fives would engage specific subcontractors to supply equipment under the Contracts. The Contracts contain a list of "mandatory" vendors from which Fives could select to supply that equipment, including Converteam (now known as GE Energy). Doc. 1-1, Ex. A, Annex A3.

Outokumpu also took steps to ensure that subcontractors would be bound by the same contract terms as Fives. The Contracts provide: "When Seller is mentioned it shall be understood as Sub-contractors included, except if expressly stated otherwise." *Id.* at 8, § 1.2. "Sub-contractor" is defined as "any person (other than the Seller) used by the Seller for the supply of any part of the Contract Equipment, or any person to whom any part of the Contract has been sub-let by the Seller." *Id.* at 8, § 1.1. "Contract Equipment" is defined as the mill and "all equipment, machines, parts, components and/or spare parts, to be delivered as stipulated within the Seller's scope of supply." *Id.* at 6, § 1.1.

While Plaintiffs fail to mention the Contracts in their Complaint, their allegations – that GE Energy supplied the motors, which were components of the CRMs – establish that GE Energy meets the express definition of "Sub-contractor" in the Contracts. Furthermore, they establish that the motors were supplied pursuant to the Contracts. *See* Doc. 1-1, Exs. A, B, and C. Plaintiffs acknowledge that the motors were "integral to the completion and proper construction" of the CRMs. Compl., ¶¶ 13-14. Plaintiffs also borrow language directly from the Contracts in

alleging that GE Energy had a duty to "properly engineer, design, manufacture, fabricate, procure, deliver, install, supervise, supply and/or commission" the motors and equipment. *Compare* Compl., ¶ 33 *with* Doc. 1-1, Ex. A, § 2.1 (stating that the Seller [i.e. FLI and/or its subcontractors, including GE Energy] "shall provide … the engineering, manufacturing, fabrication, and/or procuring of a Cold Rolling Mill").

The Contracts each contain an arbitration provision requiring arbitration of "[a]ll disputes arising between both parties in connection with or in the performance of the Contract." Doc. 1-1, Exs. A, B, and C, at ¶ 23.1. The arbitration must take place in Germany under the Rules of Arbitration of the International Chamber of Commerce. *Ibid.*

### C.    The Consortial Agreement

Fives, GE Energy, and a third company, DMS, formed a consortium to bid on supplying the CRMs to the steel plant. In December 2007, they entered into an Agreement for Consortial Cooperation (the "Consortial Agreement"). *See* Doc. 1-1, Ex. D. The Consortial Agreement made Fives the "LEADING PARTY" of the consortium and responsible for "leadership for the CONTRACT." *Id*., Art. III. Fives, DMS, and GE Energy agreed to "carry out the CONTRACT awarded by [Outokumpu]." *Id*., Art. II. Each of them "assume[d] the full responsibility for the fulfillment of its obligations under the CONTRACT" and was made "fully responsible for the proper implementation of its scope of supply and services …

7

during the proposal and negotiation stage as well as after the effective date of the CONTRACT … *according to the provisions stipulated in the CONTRACT, and in such a way as if it were an independent contractor to [Outokumpu]*." *Id*., Arts. II and IVA (emphasis added).

Regarding arbitration, the Consortial Agreement provided that if "a dispute occurs between [Outokumpu] and [Fives], which results in an arbitration proceeding under the CONTRACT, [Fives] shall have the right to join [GE Energy] into the arbitration proceedings with [Outokumpu] and [GE Energy] hereby agrees that it shall be bound by the arbitral award, as long as the latter is given the opportunity to defend its interests in the arbitration procedure held under the CONTRACT." *Id.*, Art. XI.

D.    Failure of the CRM Motors and Outokumpu's Claims

In June 2014, one of the CRM motors failed. Compl., ¶ 17. This prompted inspections that uncovered problems with some of the other motors. *Id.*, ¶¶ 18-21. Over the next 12-18 months, the motors were repaired, but Outokumpu experienced downtime. *See id.*, ¶¶ 18-24.

Outokumpu has filed two lawsuits arising from the CRM motor failures. In June 2015, a year before filing this case, Outokumpu and one of its insurers, Sompo Japan Insurance Company of America ("Sompo"), sued Fives in the Circuit Court of Mobile County, Alabama. Doc. 38-4. Outokumpu's claims against Fives arose

from the same Contracts and the same alleged motor failures. *Id*. at 3-7. Notably, Outokumpu alleged that Fives had "engineered, manufactured, supplied and installed" the CRM motors. *Id.*, ¶ 21. Outokumpu claimed that Fives had breached the Contracts, express warranties, and implied warranties of fitness and merchantability under Alabama's Uniform Commercial Code, Ala. Code §§ 7-2-314 & -315. *Id.* at 8-9. Outokumpu also asserted claims for negligence, misrepresentation, and specific performance under the Contracts. *Id.* at 10-13.

Fives moved to compel arbitration. Doc. 34-1. On October 30, 2015, the Mobile County Circuit Court granted Fives's motion to compel arbitration and stayed the *Outokumpu v. Fives* case. Doc. 38-6. On September 30, 2016, the Alabama Supreme Court affirmed, without opinion, the order compelling arbitration of Outokumpu's claims against Fives. 11/3/16 Tr. at 14:4-15:3; *Outokumpu Stainless USA, LLC v. Fives ST Corp.*, 233 So. 3d 921 (Table) (Ala. 2016). At the November 3, 2016 hearing on Plaintiffs' first motion to remand this action, Outokumpu's insurers' counsel represented that "the litigation against Fives, the general contractor, is most likely headed for arbitration in Germany." 11/3/16 Tr. at 32:11-14.

In June 2016, Outokumpu filed this case in the Mobile County Circuit Court alleging that GE Energy had "negligently engineered, designed, manufactured, fabricated, procured, delivered, installed, supervised, serviced, supplied and/or

commissioned the motors and equipment." *Id.*, ¶ 34. Outokumpu further claimed that GE Energy breached "professional design and construction warranties" as well as the same implied warranties of fitness and merchantability under the Alabama UCC. *Id.* at 8-10. Finally, Outokumpu claimed that GE Energy was liable under Alabama's Extended Manufacturer's Liability Doctrine. *Id.* at 10-12.[3]

## II.    COURSE OF PROCEEDINGS

GE Energy removed this action to the United States District Court for the Southern District of Alabama on July 18, 2016. GE Energy invoked jurisdiction pursuant to 9 U.S.C. § 205 and diversity. Doc. 1. On July 22, 2016, GE Energy moved to compel arbitration pursuant to the Federal Arbitration Act and the Convention and to dismiss Outokumpu's claims. Doc. 6. GE Energy also moved to dismiss the claims of the insurers of Outokumpu's parent company. Doc. 7.

Outokumpu and the insurers moved to remand. Docs. 34 & 35. After full briefing and a hearing on November 3, 2016 (Docs. 38, 41, 42, 44, & 82), the magistrate judge recommended that the district court deny the motions to remand as well as GE Energy's motion to dismiss. Doc. 50. The parties objected to the Report and Recommendation. Docs. 51-56.

---

[3] Outokumpu's insurers claim the right to subrogate to the interests of Outokumpu and its parent company in each of these claims. Compl., ¶¶ 38, 43, 50, 59.

On December 22, 2016, the district court adopted the Report and Recommendation as the opinion of the court, thus denying Plaintiffs' motions to remand and GE Energy's motion to dismiss. Doc. 57. GE Energy then moved to compel arbitration of the claims of Outokumpu's parent company's insurers. Doc. 62. By orders dated January 30 and February 3, 2017, the district court granted both of GE Energy's motions to compel arbitration. Docs. 68 & 69.

Outokumpu and the insurers appealed. Docs. 70 & 73. On August 30, 2018, after briefing and oral argument, this Court issued its decision in *Outokumpu I*. Adopting a "bifurcated analysis" of the jurisdiction and arbitration questions, 930 F.3d at 1320, this Court issued a split decision on those two questions. This Court held that the district court had properly exercised jurisdiction pursuant to 9 U.S.C. § 205 and thus affirmed the denial of Plaintiffs' motions to remand, but the Court reversed the district court's orders granting GE Energy's motions to compel arbitration because GE Energy had not signed the Contracts and therefore could not compel arbitration under the Convention. 930 F.3d at 1322-27. On September 20, 2018, GE Energy filed a petition for rehearing *en banc*, which was denied on November 9, 2018.

On December 7, 2018, after the case returned to the district court, Plaintiffs filed a joint motion to remand. Doc. 87. GE Energy moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 88. The district court stayed briefing on the motion

to dismiss. Doc. 91. GE Energy opposed Plaintiffs' motion to remand, and Plaintiffs filed a reply in support. Docs. 98, 100.

On January 2, 2019, GE Energy moved to stay this action pending resolution of its anticipated petition for a writ of certiorari to the Supreme Court. Doc. 92. Plaintiffs opposed a stay, and the district court denied GE Energy's motion. Docs. 97 & 104.

On February 27, 2019, the magistrate judge conducted a hearing on Plaintiffs' motion to remand. Doc. 105. On March 19, 2019, the magistrate judge recommended that the district court remand this case to state court on the basis that "[t]he remaining state-law claims are supplemental in nature and the Court has inherent authority to remand them to state court." Doc. 107 at 6. GE Energy objected to the Report and Recommendation, and Plaintiffs responded. Docs. 108 & 109.

On April 18, 2019, the district court adopted the Report and Recommendation. Doc. 110. The district court concluded that because this Court held that GE Energy could not compel arbitration under the Convention for the reason that it had not signed the Contracts, then there was no agreement in writing for purposes of jurisdiction. *Id.* at 3. The district court said that "GE Energy's assertion to the contrary" was "frivolous." *Id.* In reaching those conclusions, however, the district court did not mention this Court's "bifurcated analysis" or this Court's holding that

the Contracts signed by Outokumpu and Fives were sufficient for jurisdictional purposes (even if not for arbitration purposes). *Outokumpu I*, 902 F.3d at 1320, 1324. This appeal followed. Doc. 111.

## III. GE ENERGY'S PETITION FOR A WRIT OF CERTIORARI

On February 7, 2019, GE Energy filed its petition for a writ of certiorari with the Supreme Court seeking review of this Court's decision in *Outokumpu I* that GE Energy may not rely on the Contracts to compel arbitration. Doc. 103. The Supreme Court granted GE Energy's petition—which presented the question whether the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") permits a non-signatory to an arbitration agreement to compel arbitration based on the doctrine of equitable estoppel—on June 28, 2019.[4] The Supreme Court is expected to issue a decision during its October 2019 Term.

---

[4] Docket for Supreme Court Case No. 18-1048, available at: https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/18-1048.html (last checked August 23, 2019).

## SUMMARY OF THE ARGUMENT

Under *Outokumpu I*'s "bifurcated analysis," this Court's holding that the district court had jurisdiction pursuant to 9 U.S.C. § 205 is dispositive and requires reversal of the district court's remand order. In *Outokumpu I*, this Court held that in assessing its jurisdiction, a district court must employ the four-factor test of *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005). The first factor is whether "there is an agreement in writing, that is, an arbitral clause in a contract or an arbitration agreement … signed by the parties." *Outokumpu I*, 902 F.3d at 1324. This Court determined, on the facts of this very case, that "[b]ecause the Contracts are signed by Outokumpu and Fives, *the Contracts satisfy the first factor*." *Id.* (emphasis added). In other words, regardless of whether GE Energy signed the Contracts or could enforce the arbitration provisions of the Contracts, the first factor's signature requirement was satisfied *for jurisdictional purposes*.

The district court, however, confused the different standards for jurisdiction and arbitration adopted by this Court and did not even reference this Court's holding that the first factor under *Bautista* had been satisfied for purposes of jurisdiction. Instead, even though the question before the district court was one of jurisdiction, not arbitration, it skipped to this Court's conclusion in the arbitration portion of its opinion that "under the more rigorous analysis of the *Bautista* factors, specifically the first, . . . GE Energy could not prevail on its motion to compel arbitration"

because GE Energy had not signed the Contracts. Doc. 110 at 2 (citing pp. 14-15 of the *Outokumpu I* slip opinion, which addressed GE Energy's motion to compel arbitration). The district court concluded that because GE Energy could not meet the first *Bautista* factor – the signature requirement – for arbitration purposes, it could not that factor for jurisdiction purposes. *Id.* at 3.

The district court's approach was completely at odds with this Court's instruction that the two questions (jurisdiction and arbitration) are "interrelated—but actually quite separate" and therefore district courts must conduct "a bifurcated analysis." *Outokumpu I*, 902 F.3d at 1320. In addition, the district court's approach violated this Court's clear instruction that "in determining jurisdiction the district court need not – ***and should not*** – examine whether the arbitration agreement binds the parties before it." *Id.* at 1324 (emphasis added). Contrary to this Court's direction, the district court conflated the two inquiries and ignored altogether this Court's holding that for jurisdictional purposes, the signature requirement was met.

This should be the end of the discussion. In *Outokumpu I*, this Court found that there was jurisdiction. Under the law-of-the-case doctrine, "findings and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case." *Schiavo ex rel. Schindler v. Schiavo*, 403 F. 3d 1289, 1291 (11th Cir. 2005) (internal quotation marks and citations omitted). Accordingly, the district court was precluded from revisiting that issue on remand. Because the

district court failed to adhere to this Court's ruling regarding jurisdiction, it must be reversed.

The district court also incorrectly determined that it had "inherent authority to remand." While the district court acknowledged that 28 U.S.C. § 1367(c), which provides for supplemental jurisdiction, did not apply by its terms, the district court nonetheless premised its remand on that section, explaining that Plaintiffs' claims were "supplemental *in nature.*" *Id.* at 6 (emphasis added). But the statutory basis for jurisdiction in this case is 9 U.S.C. § 205, not § 1367. In *Outokumpu I*, this Court never mentioned supplemental jurisdiction and made no provision for reevaluating jurisdiction if a party ultimately cannot compel arbitration. In fact, this Court's instructions were exactly the opposite: district courts are to analyze the jurisdiction and arbitration questions separately, apply different standards, and not decide jurisdiction on the basis of whether the parties are bound to arbitrate. The district court's conclusion that it had the "inherent authority" to remand conflicts with both *Outokumpu I* and § 205 and must be reversed.

Further, even if the district court had the "inherent authority" to remand, the district court abused its discretion by applying it in this action because the case "relates to" an arbitration agreement falling under the Convention.

## ARGUMENT

This Court should apply its prior decision in this case, *Outokumpu I*, and hold that the district court has jurisdiction and must exercise it. 9 U.S.C. § 205 is a stand-alone grant of federal jurisdiction. It is not supplemental jurisdiction, and a district court does not have "inherent authority" to remand a case where jurisdiction under § 205 exists. Even if such "inherent authority" exists, the district court abused its discretion by applying it in this case.

## I.    *OUTOKUMPU I* CONTROLS.

In *Outokumpu I*, this Court explained that while the questions of jurisdiction and arbitration under the Convention are "*seemingly* interrelated," they are "*actually* quite separate." 902 F.3d at 1320 (emphases added). The Court adopted a "bifurcated analysis" of those separate questions and clearly articulated different standards for each:

> Where jurisdiction is challenged on a motion to remand, the district court shall first perform a limited inquiry on the face of the pleadings and the removal notice to determine whether the suit "relates to" an arbitration agreement falling under the Convention under the factors articulated in *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005). On a motion to compel arbitration, the district court must engage in a more rigorous analysis of the *Bautista* factors to determine whether the parties before the district court entered into an agreement under the meaning of the Convention to arbitration their dispute.

*Id.*

Emphasizing the separateness of the inquiries, this Court applied that bifurcated analysis in separate sections of its opinion. In Part IV of its opinion, the Court addressed the motion to remand. *Id.* at 1322-25. Then, in Part V of its opinion, the Court addressed the motion to compel arbitration. *Id*. at 1325-27.

In its jurisdictional analysis, this Court observed that in amending the Federal Arbitration Act to implement the Convention, Congress had "sought to promote the development of a uniform body of federal law under the Convention." *Id*. at 1323. To that end, Congress created original jurisdiction over an action falling under the Convention in § 203 and "also included broad grounds for removal" under § 205. *Id*.

The critical question for jurisdiction was the scope of the phrase "relates to" in § 205. This Court agreed with the Fifth, Eighth, and Ninth Circuits that "the 'relates to' language of Section 205 provides for broad removability of cases to federal court." *Id*. This Court then set a low bar for jurisdiction: "While the link between the arbitration agreement and the dispute is not boundless, ***the arbitration agreement need only be sufficiently related to the dispute such that it conceivably affects the outcome of the case***." *Id.* at 1323-24 (emphasis added).

This Court made exceedingly clear that a district court is not to determine its jurisdiction under § 205 based upon whether the parties may ultimately be required to arbitrate. First, this Court stated that the inquiries are "distinct." *Id*. at 1324.

Then, the Court referenced *Bautista*'s holding that "Section 205 does not require a district court to review the putative arbitration agreement – or investigate the validity of the signatures thereon – before assuming jurisdiction." *Id.* (quoting *Bautista*, 396 F.3d at 1301). Finally, this Court directed that "in determining jurisdiction the district court need not – ***and should not*** – examine whether the arbitration agreement binds the parties before it." *Id.* (emphasis added).

All that the district court is required to do to assess jurisdiction is determine "whether the removing party has articulated a non-frivolous basis" for finding that the four *Bautista* factors are satisfied and that "the agreement to arbitrate could conceivably affect the outcome of the case." *Id.* This Court held that GE Energy had satisfied this test and therefore jurisdiction exists.

With respect to the first *Bautista* factor – that there is an agreement in writing signed by the parties – this Court held that "[b]ecause the Contracts are signed by Outokumpu and Fives, the Contracts satisfy the first factor." *Id.* With respect to the "relates to" requirement, this Court held that "the present lawsuit against GE Energy concerns the performance of the Outokumpu-Fives Contracts, and the arbitration agreement contained in those Contracts is sufficiently related to the instant dispute such that it could conceivably affect the outcome of this case." *Id.* at 1325.

This Court observed that its approach – limiting the jurisdiction inquiry to whether there is a non-frivolous basis for finding that the *Bautista* factors are met

and whether "the agreement to arbitrate could conceivably affect the outcome of the case" without resolving, or even considering, "whether the arbitration agreement binds the parties before it" – "is consistent with [its] removal jurisprudence." *Id*. at 1324-25. Moreover, the FAA "explicitly states that the 'procedure for removal of causes otherwise provided by law shall apply.'" *Id.* at 1325 (quoting 9 U.S.C. § 205).

This Court then moved on to the arbitration issue. Three aspects of that section are relevant here. First, the Court expressly restated that it had "found that the district court properly exercised jurisdiction." *Id*. at 1325. Second, the Court underscored that the inquiry applicable to a motion to compel arbitration is a higher bar: "this inquiry is necessarily more rigorous than on a motion to remand because the district court must determine whether the parties before the court agreed to arbitrate their dispute." *Id.* Third, the Court held that, in the context of enforcing arbitration, the first *Bautista* factor – that there is an agreement in writing signed by the parties within the meaning of the Convention – requires that the arbitration agreement be signed by the parties before the Court or their privities. The Court held this factor was not satisfied for purposes of the motion to compel arbitration because GE Energy "is undeniably not a signatory to the Contracts." *Id.* at 1326.

The stark difference between this Court's analysis of the first *Bautista* factor in the jurisdiction context and its analysis of that factor in the arbitration context

clearly shows how distinct those analyses are to be under the "bifurcated" approach it adopted. For jurisdiction, this Court held that it was enough for the Contracts to have been signed by Outokumpu and Fives. *Id.* at 1324. But under the more rigorous analysis required for compelling arbitration, the first *Bautista* factor was not satisfied because GE Energy, the party before the court seeking to enforce the arbitration agreements, did not sign the Contracts. *Id.* at 1325-26. In other words, the Court created two separate standards for the first *Bautista* factor. For jurisdiction, as long as the parties to the agreement signed it, even if the dispute before the court involves other parties, the factor is met; but for arbitration, the parties before the court must have signed the agreement.

*Outokumpu I* controls the outcome of this appeal. This Court held that the district court had jurisdiction. Therefore, the district court erred in remanding to state court.

## II. THE DISTRICT COURT MISAPPLIED *OUTOKUMPU I*.

In its analysis of Plaintiffs' joint motion to remand, which was filed when the case returned to the district court after *Outokumpu I*, the district court conditioned the existence of jurisdiction on GE Energy's ability to compel arbitration, posing the question as follows: "with arbitration not being compelled – that is, with GE Energy no longer being able to assert an international arbitration defense and with the Complaint asserting only state-law claims – should the Court now remand this action

to the Circuit Court of Mobile County, where it was originally filed?" Doc. 107 at 3. The district court thus flatly ignored this Court's instruction that "in determining jurisdiction, the district court need not – ***and should not*** – examine whether the arbitration agreement binds the parties before it." 902 F.3d at 1324 (emphasis added).

Beyond that fundamental failing, the district court made three additional errors in applying *Outokumpu I*. First, in its order adopting the magistrate judge's Report and Recommendation, the district court overlooked this Court's holding that the first *Bautista* element was satisfied because Outokumpu and Fives signed the Contracts. Second, the district court ignored this Court's holding that "this lawsuit sufficiently 'relates to' the arbitration agreements in the Outokumpu-Fives Contracts" because "[they] could conceivably affect the outcome of this case." 902 F.3d at 1325. Third, the district court grafted a time element onto the jurisdictional decision, stating that, for jurisdictional purposes, "the circumstances of a case can change and, in fact, did change here when the Eleventh Circuit ruled that arbitration could not be compelled." Doc. 107 at 5. This is contrary to *Outokumpu I*'s admonition that the jurisdictional inquiry under 9 U.S.C. § 205 "is consistent with our removal jurisprudence, which confines its analysis to the face of the pleadings." 902 F.3d at 1325 (quoting 9 U.S.C. § 205).

**A.    The District Court Overlooked this Court's Holding that the First *Bautista* Factor Was Satisfied for Jurisdiction Purposes.**

*Outukumpu I* set distinct standards for jurisdiction and arbitration – even with respect to the factual findings required for resolving the two separate inquiries.  This could not have been clearer than with respect to this Court's assessment of the first *Bautista* factor, "that there is an agreement in writing, that is, an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."  *Outokumpu I*, 902 F.3d at 1324.  GE Energy did not sign the Contracts that contain the arbitration agreements, but for jurisdiction, this Court held that was okay.  "Because the Contracts are signed by Outokumpu and Fives, the Contracts satisfy the first factor."  *Id.*

In remanding the action, the district court did not mention this Court's holding that, *for jurisdiction*, the first factor was satisfied – because Outokumpu and Fives signed the Contracts.  It referred only to this Court's holding, *in the arbitration section of Outokumpu I,* that because GE Energy did not sign the Contracts, "there is no agreement in writing within the meaning of the Convention."  Doc. 110 at 2 (quoting *Outokumpu I* slip op. at 14-15, 902 F.3d at 1325).  That was error.  This Court has already held that the first *Bautista* factor was satisfied for purposes of jurisdiction.

The district court chided GE Energy for suggesting that the court "rely on its pleadings which assert" that there is an agreement in writing for jurisdiction

purposes because Outokumpu and Fives signed the Contracts.  Doc. 110 at 3.  But that is exactly what this Court said to do in *Outokumpu I*.  "Where jurisdiction is challenged on a motion to remand, the district court shall first perform a limited inquiry on the face of the pleadings and the removal notice…."  902 F.3d at 1320. More specifically, this Court instructed that "in determining jurisdiction the district court need not—and should not—examine whether the arbitration agreement binds the parties before it."  *Id.* at 1324.  And yet the district court acted directly contrary to that instruction.

By relying on the fact that GE Energy could not compel arbitration because it did not sign the Contracts, the district court determined its jurisdiction on the basis of whether Outokumpu and GE Energy were bound to arbitrate.  In doing so, the district court failed to follow *Outokumpu I* and should be reversed.

**B. This Court's Finding that the Arbitration Agreements in the Contracts Could Conceivably Affect the Outcome of this Case Is Still True.**

*Outokumpu I* reaffirmed the general rule that jurisdiction is to be determined at the outset of a case based on the notice of removal and pleadings.  This Court observed that "[t]he language of § 205 strongly suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone," 902 F.3d at 1324 (internal quotation marks and citations omitted), and made clear that its approach – separating the jurisdictional inquiry for removal under 9

U.S.C. § 205 from the merits of the arbitration inquiry – "is consistent with our removal jurisprudence, which confines its analysis to the face of the pleadings. Nothing in 9 U.S.C. § 201 *et seq.* expresses an intent of Congress for the courts to engage in a uniquely rigorous inquiry upon removal of cases on the basis of the Convention, and in fact, the FAA explicitly states that the 'procedure for removal of causes otherwise provided by law shall apply.'" *Id.* at 1325 (quoting 9 U.S.C. § 205).

In any event, this Court's finding that the arbitration agreement in the contracts could conceivably affect the outcome of this case is still true. "As alleged in the pleadings, the present lawsuit against GE Energy concerns the performance of the Outokumpu-Fives Contracts, and the arbitration agreement in those Contracts is sufficiently related to the instant dispute such that it could conceivably affect the outcome of this case." *Outokumpu* I, 902 F.3d at 1325. That is as true today as when GE Energy removed the case three years ago and when this Court so held last year. And it is still true regardless of whether this case is headed for arbitration; otherwise, why would this Court have said "the arbitration agreement in those Contracts is sufficiently related to the instant dispute such that it could conceivably affect the outcome of this case" in the same opinion in which it held GE Energy could not compel arbitration?

This case still involves supplying components of the mills and performance of the Contracts. It is still conceivable that the arbitration agreement could affect the outcome of this case. In particular, Outokumpu still could file an arbitration against Fives, which the insurers represented to the district court was likely, not just conceivable.[5]

The district court did not even mention this Court's finding that the arbitration agreements could conceivably affect the outcome of this case. By focusing on (and misinterpreting) this Court's holding regarding the signature requirement and on its supposed "inherent authority" to remand (erroneously, as explained below), the district court missed the most important issue for jurisdiction. The statute conferring jurisdiction, § 205, premises jurisdiction on whether the subject matter of the dispute "relates to an arbitration agreement … falling under the Convention." This Court held that requirement was satisfied under the "conceivably affect" standard. *Outokumpu I*, 902 F.3d at 1325. Because § 205 has been satisfied, jurisdiction exists.

## C. The Circumstances Have Not Changed.

The district court's belief that the circumstances have changed for jurisdiction purposes because of *Outokumpu I*'s holding that GE Energy cannot compel arbitration is wrong. As just noted, the facts that this Court relied upon to find

---

[5] Why Outokumpu has not already pursued arbitration against Fives is a mystery, although it is notable that Plaintiffs repeatedly advocated that the district court lacked jurisdiction because "that there is no international arbitration that this action *now* 'relates to.'" *See, e.g.*, Doc. 87 at 2 (emphasis added).

jurisdiction in *Outokumpu I* are the same facts that existed when GE Energy removed the case and when this Court issued its decision. Specifically, Outokumpu and Fives signed the Contracts, which this Court held satisfies the first *Bautista* requirement for jurisdiction. And it is still conceivable, as this Court found in *Outokumpu I*, that the arbitration agreements in the Contracts could affect the outcome of this case. In other words, nothing has changed since GE Energy removed this case.

Instead of addressing this Court's decision in *Outokumpu I* that jurisdiction exists, the district court erroneously relied upon the Fifth Circuit's decision in *Beiser v. Weyler*, 284 F.3d 665 (5th Cir. 2002). While *Beiser* does say that "[i]f the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court," *id.* at 675, the context of *Beiser* limits the utility of its reasoning on this point, especially in the face of this Court's clear directives.

In *Beiser*, the plaintiff argued that jurisdiction was lacking because he signed the subject arbitration agreements on behalf of the corporate parties only, not individually. *Id.* at 667. Curiously, however, he "insist[ed] that he challenge[d] only the subject matter jurisdiction of the federal courts under § 205, not the merits of the motion to compel arbitration." *Id.* at 667-68. The Fifth Circuit wondered aloud "why Beiser chooses to challenge only our jurisdiction under § 205 when his argument just as easily could apply to the merits of the motion to compel arbitration."

*Id.* at 668, n.5.  Whatever the plaintiff's thinking in that case, the Fifth Circuit only contended with the jurisdictional inquiry – and not whether the plaintiff could be compelled to arbitrate.  Therefore, *Beiser*'s statement about what a district court should "ordinarily" do after deciding that the removing defendant cannot compel arbitration is *dicta*.

In *Outokumpu I*, however, this Court squarely faced both questions and established a "bifurcated analysis" – a term that nowhere appears in *Beiser*.  This Court clearly articulated different standards for the two inquiries; *Beiser* did not.  This Court decided both issues, in the same opinion; *Beiser* did not.  This Court's decision controls; *Beiser* does not.

This Court is not alone in concluding that jurisdiction exists even if arbitration is not required.  In *Reid v. Doe Run Resources*, 701 F.3d 840 (8th Cir. 2012), the Eighth Circuit held that jurisdiction existed under § 205 even though "[t]he issues in this case are not referable to arbitration."  *Id.* at 843-44, 848.  In *Reid*, the plaintiffs sued the owners of a smelting facility in Peru for environmental contamination.  The defendants removed pursuant to § 205 because of the action's relationship to an arbitration proceeding in Peru.  The Eighth Circuit held that jurisdiction existed under § 205 because "issues in the arbitration could conceivably affect the outcome of the plaintiffs' lawsuit."  *Id*. at 844.

At the same time, the Eighth Circuit held that the defendants were not entitled to a mandatory stay pending the outcome of the arbitration because, like GE Energy here, the plaintiffs were not signatories to the subject arbitration agreements. *Id.* at 847-48. Thus, the Eighth Circuit, like this Court in *Outokumpu I*, made clear that the jurisdictional inquiry does not hinge on whether the claims are arbitrable: "This court holds that the issues in this case 'relate to' the arbitration but are not 'referable to' arbitration. As the district court correctly stated, the 'relate to' standard is 'different and much lower than the question of whether the issues are referable to arbitration.'" *Id*. at 848 (select quotation marks omitted).[6]

That is exactly the same reasoning this Court employed in adopting its "bifurcated analysis" and holding that jurisdiction is determined based on "a limited inquiry on the face of the pleadings and the removal notice" whereas arbitration requires "a more rigorous analysis … to determine whether the parties before the district court entered into an agreement under the meaning of the Convention." *Outokumpu I*, 902 F.3d at 1320. Indeed, limiting the jurisdictional inquiry to the

---

[6] The district court attempted to distinguish *Reid* on the basis that even though "the plaintiffs had not entered into arbitration agreements, … there was an on-going international arbitration proceeding to which the plaintiffs' non-arbitrable claims would still 'relate.'" Doc. 107 at 6, n.3. This is a distinction without a difference. Under *Outokumpu I*, the dispositive issue was (and is) that *the arbitration agreements* could conceivably affect the outcome of this case. 902 F.3d at 1325. In any event, the *Outokumpu v. Fives* case was compelled to arbitration, and the insurers' counsel represented to the district court that that dispute was likely to proceed to arbitration in Germany as required by the Contracts. The fact that Plaintiffs have not yet pursued that arbitration while the jurisdiction and arbitration issues continue to be sorted out cannot possibly be outcome determinative.

pleadings and the notice of removal is not just what this Court did in *Outokumpu I*, it is also what this Court said in *Bautista* was required by 9 U.S.C. § 205 itself: "The language of § 205 strongly suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone." *Outokumpu I*, 902 F.3d at 1324 (quoting *Bautista*, 396 F.3d at 1301).

In believing that the circumstances changed when this Court held that GE Energy cannot compel arbitration, the district court erred in looking beyond the pleadings and the removal notice in assessing its jurisdiction. Accordingly, the district court should be reversed.

III. **THE LAW-OF-THE-CASE DOCTRINE CONTROLS THE OUTCOME OF THIS APPEAL AND REQUIRES REVERSAL OF THE DISTRICT COURT'S REMAND ORDER.**

"'Under the law-of-the-case doctrine, [the resolution of] an issue decided at one stage of a case is binding at later stages of the same case.'" *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313 (11th Cir. 2000) (alterations in *Schiavo*). The doctrine precludes courts from "revisiting issues that were decided explicitly or by necessary implication in a prior appeal," and is binding "not only on the trial court

but on [the appellate court] as well." *Id.* (internal quotation marks and citations omitted).[7]

*Outokumpu I* explicitly decided that the district court has jurisdiction in this action pursuant to 9 U.S.C. § 205, and therefore established the law-of-the-case on that issue. The district court was bound by this holding and erred by reconsidering the issue on remand. Accordingly, the district court's decision should be reversed.

## IV.   § 205 GOVERNS, NOT § 1367.

Section 205 is the controlling statute not only for removal but also for remand, and it provides no basis to remand this action. The district court, however, likened its jurisdiction to supplemental jurisdiction under 28 U.S.C. § 1367(c) and, having done so, incorrectly concluded that it "has inherent authority to remand once the international arbitration defense has been eliminated." Doc. 107 at 6. There is no statutory or other basis for this "remand by analogy" approach. Congress conferred jurisdiction on the district court, and the district court was obligated to exercise it.

### A.     District Courts Must Exercise the Jurisdiction Given to Them.

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716

---

[7] There are three exceptions to the law-of-the-case doctrine, none of which apply here: "(1) new and substantially different evidence emerges at a subsequent trial; (2) controlling authority has been rendered that is contrary to the previous decision; or (3) the earlier ruling was clearly erroneous and would work a manifest injustice if implemented." *Schiavo*, 403 F.3d at 1291.

(1996). They "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976) ("federal courts have a virtually unflagging obligation … to exercise the jurisdiction given to them") (internal quotation marks omitted); *Burr v. Phillip Morris USA Inc.*, 559 Fed. Appx. 961, 965 (11th Cir. 2014) (quoting *Ambrosia Coal & Const. Co. v. Pagés Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004)) ("Barring limited exceptions, federal courts are 'to exercise the jurisdiction given [to] them.'").

In *Quackenbush*, the Supreme Court addressed the nature and broad scope of the duty of federal courts to exercise jurisdiction conferred by Congress. The California Insurance Commissioner, as trustee over the assets of an insurance company in liquidation, sued Allstate in state court seeking contract and tort damages for alleged breach of certain reinsurance agreements. Allstate removed based on diversity jurisdiction. The Commissioner sought remand, arguing that the district court should abstain under the *Burford* abstention doctrine, *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because the viability of Allstate's setoff claims was a hotly disputed question of state law that was then being addressed in a state court case arising out of the liquidation. The district court remanded the case to state court, and Allstate appealed. The Ninth Circuit reversed, and the Commissioner appealed to the Supreme Court.

The Supreme Court agreed with the Ninth Circuit's reversal, holding that the district court was bound to exercise jurisdiction. "Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the *Burford* doctrine." *Id.* at 731.

The jurisdiction conferred on the district court by § 205 is no different than that addressed in *Quackenbush*. It is neither equitable (like *Quackenbush*, this is an action for damages) nor discretionary. Section 205 contains no exceptions and provides no authority to remand if arbitration is not compelled. In *Outokumpu I*, this Court held that the district court has jurisdiction, and the district court was therefore bound to exercise it. Refusing to do so contravenes the Supreme Court's direction that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not." *Cohens*, 19 U.S. at 399.

## B.    Remand Is Governed By § 205.

District courts may not remand on grounds not provided for in the controlling removal statute. *See Thermtron Products v. Hermansdorfer*, 423 U.S. 336, 351 (1976), *abrogated on other grounds by Quackenbush*, 517 U.S. at 714-715. Here, the controlling statute – § 205 – provides no basis for remand.

33

This Court's decision in *In re City of Mobile,* 75 F.3d 605 (11th Cir. 1996), is instructive on this point.  In that case, the plaintiffs initially filed suit in state court and raised only state law claims, but they later amended to add a claim under 28 U.S.C. § 1983.  The defendants removed, and the plaintiffs moved to remand the entire action.  The district court granted the motion, and the defendants petitioned for a writ of mandamus to challenge that ruling.  The plaintiffs argued that remand was permissible under § 1367 and the pendent jurisdiction doctrine, citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), just as plaintiffs did here.  *Id.* at 607-608.  The plaintiffs also argued that "other compelling reasons exist to remand."  *Id.* at 607.

This Court reversed, holding that "[t]he district court exceeded its discretionary authority in remanding the entire case pursuant to section 1367(c)(2) and (c)(4) *because it remanded the case on grounds not provided for in the controlling statute*."  *Id.* (citing *Thermtron*, 423 U.S. at 351) (emphasis added).  The Court pointed to the Supreme Court's instruction in *Thermtron* that "'we are not convinced that Congress ever intended to extend carte blanche authority to district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute.'"  *Id.* at 608 (quoting *Thermtron*, 423 U.S. at 351).  Because there was no basis for remand in the statute pursuant to which the case had been removed, 28

U.S.C. §§ 1441(b) & (c), this Court held that "the district court must retain jurisdiction over the properly removed federal claim." *Id.*

This Court reiterated these principles in *Lloyd v. Benton*, 686 F.3d 1225 (11th Cir. 2012). There, the plaintiff prisoner filed a *pro se* complaint in Florida state court under § 1983. The defendants removed under 28 U.S.C. §§ 1331, 1441(a), and 1446(a)-(b). However, the plaintiff was a "three strikes" litigant under the Prison Litigation Reform Act ("PLRA"), specifically 28 U.S.C. § 1915(g), and therefore was precluded from pursuing another *pro se* claim in federal court. The district court remanded the case, and the defendants appealed. 686 F.3d at 1226-27.

This Court reversed and vacated the district court order remanding the case. The Court agreed with the defendant-appellants that "the PLRA does not expressly or impliedly authorize a district court to remand under the instant circumstances" and, therefore, "the district court acted without a sufficient legal basis to overcome Appellants' right to remove." *Id.* at 1227. Citing both *Thermtron* and *In re City of Mobile*, *supra*, this Court explained that "district courts lack authority 'to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statutes'" and "a district court exceeds its authority when it remands a federal claim 'on grounds not provided for in the controlling [removal] statute.'" *Id.* at 1228 (quoting, in order, *Thermtron*, 423 U.S. at 351, and *In re City of Mobile*, 75 F.3d at 607).

Here, the district court did exactly what the Supreme Court in *Thermtron* and this Court in *In re City of Mobile* and *Lloyd v. Benton* said district courts could not do. The district court determined it had "inherent authority" to remand when the controlling removal statute, § 205, provides no such grounds. Accordingly, the district court's ruling must be reversed.

### C.    § 205 Provides No Basis for Remand.

Section 205 premises jurisdiction upon the relation of "the subject matter of an action" to an arbitration agreement falling under the Convention and contains no provision authorizing remand at any point – even if arbitration is unavailable. This Court's opinion underscores this by instructing district courts to assess whether "the agreement to arbitrate could conceivably affect the outcome of the case," *Outokumpu I*, 902 F.3d at 1324, which can be true even if arbitration is unavailable as between the parties to the case. In other words, it is the relatedness of the claims and the action itself to the arbitration agreement that matters for jurisdiction under § 205, not whether those claims are arbitrable.

The district court relied on *ESAB Group, Inc. v. Zurich Insurance PLC*, 685 F.3d 376 (4th Cir. 2012), but that case does not address the question at hand. There, ESAB Group sued a number of insurers in state court after the insurers refused to defend and indemnify it against an onslaught of products liability actions. *Id.* at 383. At issue in the appeal were seven policies issued by one insurer. Five of the policies

contained arbitration agreements; two did not. After removal, the district court enforced the arbitration agreements in the five policies and remanded the claims relating to the other two policies to state court. The Fourth Circuit affirmed, holding that the district court had authority under § 1367(c) to decline to exercise supplemental jurisdiction over the claims under the two policies without arbitration clauses. *Id.* at 394-95.

The Fourth Circuit's decision offers little guidance here because in that case, the insurance agreements at issue in the remanded claims had no arbitration provision at all. Here, there are arbitration provisions in the Contracts that are central to this case, and this Court has already held that *those arbitration provisions* "could conceivably affect the outcome of *this case*." 902 F.3d at 1325 (emphasis added). Simply put, the Fourth Circuit was not faced with, and did not decide, the issue before this Court in *Outokumpu I*, and this Court issued a clear decision that jurisdiction exists under § 205 because of the relationship between this dispute and the arbitration provision in the Contracts.

### D.    § 1367(c) Does Not Apply.

Section 1367 has never been cited or invoked by any party as a basis for federal jurisdiction over this action. *See* Doc. 1 (citing 9 U.S.C. §§ 201, 202, 203 & 206 and 28 U.S.C. §§ 1331, 1332, 1441 & 1446). This alone is problematic for the district court's remand which relied on § 1367(c) because, by its plain terms, remand

under § 1367(c) is available only if jurisdiction is based on § 1367(a). 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...."); *see also Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) (explaining that the § 1367(c) factors provide discretion "to dismiss a case's supplemental state law claims"). In fact, at the hearing on Plaintiffs' motion to remand, the magistrate judge acknowledged that he was not making "a statutory finding that the statute actually applies." 2/27/19 Tr. at 52:1-3.

### E. Even if the District Court Had the Inherent Authority to Remand, the District Court Abused its Discretion by Applying it in This Case.

After acknowledging that § 1367 does not apply to this case, the district court nonetheless relied on § 1367 by analogy and concluded that it had the inherent authority to remand this action "once the international arbitration defense has been eliminated," Doc. 107 at 6, likening its authority to remand to § 1367(c)(3), which permits remand where the claims over which the district court had original jurisdiction have been dismissed. Even if such inherent authority existed – and as set forth above, it does not – the district court abused its discretion by applying it in this case.

As explained above, § 205 premises jurisdiction on the relatedness of the action to the arbitration agreement, not the availability of arbitration as defense.

*Outokumpu I* establishes that this action "relates to" an arbitration agreement falling under the Convention, regardless of whether GE Energy can compel arbitration. Because this action relates to an arbitration agreement falling under the Convention, the district court abused its discretion by remanding it to state court.

<div align="center">***</div>

Section 205 provided jurisdiction that this Court in *Outokumpu I* held was properly exercised. Because the district court was bound to exercise that jurisdiction and had no authority to decline to do so, the district court's order should be vacated.

## CONCLUSION

The district court had jurisdiction pursuant to 9 U.S.C. § 205 as found by this Court in *Outokumpu I* and lacked authority to remand. Accordingly, this Court should reverse and vacate the district court's order granting Plaintiffs' motion to remand.

<div style="margin-left: 40%;">

*/s/ Sara Anne Ford*
One of the Attorneys for Defendant GE Energy Power Conversion France SAS, Corp.

</div>

OF COUNSEL:

Sara Anne Ford
*sford@lightfootlaw.com*
Wesley B. Gilchrist
*wgilchrist@lightfootlaw.com*
Amie A. Vague
*avague@lightfootlaw.com*

LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, AL  35203-3200
(205) 581-0700

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This motion has been prepared in 14-point Times New Roman, which is proportionally spaced font that includes serifs.

This motion complies with the type-volume limitations in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,143 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

*/s/ Sara Anne Ford*
One of the Attorneys for Defendant
GE Energy Power Conversion
France SAS, Corp.

## CERTIFICATE OF SERVICE

I certify that on September 3, 2019, a copy of the foregoing was filed with the Clerk using CM/ECF, which will send an electronic notice of filing to the following counsel of record:

Devin C. Dolive
E. Travis Ramey
BURR & FORMAN LLP
Wells Fargo Tower
420 20th Street North, Suite 3400
Birmingham, Alabama 25203

Ricardo A. Woods
Taylor Barr Johnson
BURR & FORMAN LLP
11 North Water Street, Suite 22200
Mobile, Alabama 36602

G. Randall Spear
Mark E. Spear
SPEAR, SPEAR & HAMBY, P.C.
Post Office Box 1347
Mobile, Alabama 36633

James R. Swinehart
Kenneth Wysocki
Joseph J. Ferrini
CLAUSEN MILLER, P.C.
10 S. LaSalle Street
Chicago, Illinois 60603

<div align="right">

*/s/ Sara Anne Ford*
Of Counsel

</div>